T.C. Memo. 2021-97

UNITED STATES TAX COURT

JERRY R. ABRAHAM AND DEBRA J. ABRAHAM, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 760-20L.                    Filed August 3, 2021.

Jerry R. Abraham and Debra J. Abraham, pro sese.

Derek P. Richman and Daniel C. Munce, for respondent.

MEMORANDUM OPINION

URDA, Judge:  In this collection due process (CDP) case petitioners, Jerry

R. Abraham and Debra J. Abraham, seek review pursuant to sections 6320(c)[1] and

6330(d)(1) of the determination by the Internal Revenue Service (IRS) Office of

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect at all relevant times, and all Rule references are to the Tax
Court Rules of Practice and Procedure.  We round all monetary amounts to the
nearest dollar.

[*2] Appeals to uphold the filing of a notice of Federal tax lien (NFTL) with respect to their unpaid 2012-16 Federal income tax liabilities.[2] The Abrahams argue that the settlement officer abused her discretion when she rejected their offer-in-compromise (OIC) of $50,000. The Commissioner has moved for summary judgment, contending that the settlement officer's rejection of the OIC was justified in light of the Abrahams' disposable income and assets. We agree and will grant the Commissioner's motion.

## Background

The following facts are based on the parties' pleadings and motion papers, including the attached declarations and exhibits. See Rule 121(b). The Abrahams resided in Michigan when they timely filed their petition.

A.    The Abrahams' Tax Liabilities

Mr. Abraham is a partner at Abraham & Rose, PLC, a Michigan law firm, while Mrs. Abraham was a teacher until her retirement in 2018. On their 2012-16 Federal income tax returns the Abrahams reported taxable income of $212,891, $241,832, $269,637, $301,063, and $278,780, respectively, and Federal income tax due of $55,416, $61,771, $66,987, $79,236, and $69,953, respectively. The Abrahams, however, failed to fully pay their reported liabilities.

---

[2]On July 1, 2019, the IRS Office of Appeals was renamed the Internal Revenue Service Independent Office of Appeals. See Taxpayer First Act, Pub. L. No. 116-25, sec. 1001(a), 133 Stat. at 983 (2019). As the events in this case predate that change, we will use the name Office of Appeals in this opinion.

**[\*3]**   The IRS assessed for each year the reported liability, an addition to tax for failure to timely pay under section 6651(a)(2), an addition to tax for failure to pay estimated tax under section 6654, and statutory interest.  As of August 7, 2020, the Abrahams' assessed liabilities for these years totaled $204,593.

B.   Collection Activities and CDP Proceeding

    1.   OIC Submission

As part of its efforts to collect the Abrahams' unpaid 2012-16 liabilities the IRS issued a notice informing them of the filing of an NFTL with respect to those years and apprising them of their right to request a CDP hearing pursuant to section 6320.  The Abrahams timely submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing, on which they indicated their interest in an OIC.[3]

The case thereafter was assigned to a settlement officer, who requested that the Abrahams submit, inter alia, an OIC and supporting documentation.  The Abrahams did so, submitting:  (1) Form 656, Offer in Compromise, proposing to settle their tax liabilities for $50,000, (2) Form 433-A (OIC), Collection Information Statement for Wage Earners and Self-Employed Individuals, and (3) their 2017 tax return and supporting financial documentation.

---

[3]On Form 12153, the Abrahams indicated that tax years 2009-11 were also at issue.  The Abrahams previously had instituted a CDP proceeding for these years, and the IRS informed them that they were not entitled to challenge them again.

[*4]   The Abrahams premised their OIC on doubt as to collectibility, urging acceptance based upon special circumstances.  On Form 656 they asserted that their liabilities stemmed from a "tax code bias against large families (10 children)." The Abrahams took the position that Mr. Abraham "is not eligible for SSA benefits as [a] former federal employee" and predicted "lower income as retirement [is] on horizon."

The Abrahams supplied financial details on their Form 433-A (OIC).  They reported monthly household income of $23,000 from Mr. Abraham's law firm and expenditures of $22,655.  As relevant to this case, they reported food, clothing, and miscellaneous expenses of $3,122 and religious education expenses of $2,932. The Abrahams further explained that they supported four of their children (ages 16, 18, 21, and 23), who lived with them.

The Abrahams also identified personal assets on the Form 433-A (OIC): (1) $3,000 held in a checking account; (2) an individual retirement account (IRA) with a value of $20,800; (3) their personal residence with net equity of $66,000; (4) a leased 2018 Nissan Rogue (with a $400 monthly payment); (5) a leased 2017 Infiniti QX50 (with a $552 monthly payment); and (6) clothing, furniture, and miscellaneous personal effects valued at $5,600.

[*5] 2.    Evaluation by Offer Specialist

The settlement officer subsequently transferred the Abrahams' OIC to the IRS Centralized Offer in Compromise (COIC) unit for consideration.

a.    Correspondence With the Abrahams

In April 2019 an offer specialist from the COIC unit began to analyze the OIC, asking the Abrahams for documentation to verify their income, expenses, and assets. The Abrahams complied, providing bank and credit card statements, insurance policies, vehicle leases, State tax payments, and business and personal tax returns.

The Abrahams also submitted a revised Form 656, as their initial version failed to include the required signature page. In addition to providing a signature page the Abrahams revised their explanation of special circumstances, asserting that Mr. Abraham would not be entitled to Social Security benefits at retirement because he had received a lump-sum payment upon leaving Federal Government service 24 years earlier. They further explained that Mr. Abraham "continues to support and supplement the families [sic] expenses" even though most of the Abrahams' progeny were adults. Finally, the Abrahams represented that they anticipated the reduction of income and increase of expenses upon the retirement of Mr. Abraham, who was 63 years old at the time. The parties thereafter had followup conversations during which they discussed these points in more detail.

[*6]    b.    <u>Rejection of the OIC</u>

After consideration of the Abrahams' positions and conducting her own investigation into their income, expenses, and assets, the offer specialist concluded that the Abrahams' OIC should be rejected.

As an initial matter the offer specialist noted that the Abrahams' three most recently filed tax returns showed "relatively steady" income amounts. Relying on the 2018 distribution to Mr. Abraham reported on his law firm's Form 1065, U.S. Return of Partnership Income, she calculated a monthly gross income of $31,376.

The offer specialist next concluded that the Abrahams were entitled to claim $17,215 in monthly living expenses. In reaching this conclusion the offer specialist determined that the Abrahams could claim two of their children as dependents, noting that this treatment was consistent with the Abrahams' tax returns and the tax returns for the Abrahams' adult children showed that they had sufficient income to support themselves. The offer specialist accordingly allowed $1,786 in food, clothing, and miscellaneous expenses, consistent with the national and local standards for a household with two dependents. She disallowed, however, $2,932 in religious education expenses reported by the Abrahams. Comparing the Abrahams' monthly income and expenses, the offer specialist determined that they had monthly disposable income of $14,161.

[*7]    Finally, the offer specialist analyzed the Abrahams' assets.  Relying on bank statements, she determined that the Abrahams had a net realizable equity of $60,075 in their checking accounts.  The offer specialist discovered that Mrs. Abraham owned a 2005 Honda Accord with a net realizable equity of $5,600, which was not disclosed on their Form 433-A (OIC).  She accepted the claimed $20,800 value in the Abrahams' IRA and excluded the claimed $8,790 value of the Abrahams' personal effects.

The offer specialist concluded that the Abrahams' personal residence had a net realizable equity of $134,283.  In reaching this conclusion she considered county tax records valuing the property at $175,120, as well as Redfin and Zillow estimates, which valued the property at $305,898 and $250,589, respectively.  The offer specialist valued the property at $223,188, which had been the value used during the consideration of a prior OIC.  The offer specialist then reduced that amount by 20% to account for the quick sale value of the property and subtracted the outstanding mortgage balances of $44,267.

The offer specialist subsequently prepared an Asset/Equity Table (AET), which reflected that the Abrahams had a reasonable collection potential (RCP)[4] of

_____

    [4]The Commissioner has promulgated guidelines for the evaluation of OICs. See, e.g., Churchill v. Commissioner, T.C. Memo. 2011-182, 2011 WL 3300235, at *3.  The calculation of a taxpayer's RCP occupies a central place in those guidelines.  See id.; see also Internal Revenue Manual (IRM) pt. 5.8.5.1 (Mar. 23, 2018).  A settlement officer derives the RCP from her estimate of a taxpayer's

[*8] $688,071 based upon likely future income of $467,313 over 33 months and net equity in assets of $220,758.[5]  Finding no doubt as to collectibility and no special circumstances, the offer specialist concluded that the Abrahams' OIC should be rejected.

The offer specialist communicated her conclusion to the Abrahams in August 2019, explaining that the liability could be paid in full in 33 months on the basis of the Abrahams' disposable income.  According to the offer specialist's notes, Mr. Abraham disagreed with her income and expense calculations.  He contended that, in calculating his monthly disposable income, the offer specialist had failed to take into account his support of his adult children who were either underemployed or unemployed.  He also challenged the offer specialist's downward adjustment of their food, clothing, and miscellaneous expenses and her disallowance of the religious education expenses.  Although the offer specialist offered a 72-month installment agreement, Mr. Abraham declined.

assets and likely future income.  See IRM pt. 5.8.5.4 (Mar. 23, 2018), pt. 5.8.5.20 (Mar. 23, 2018).  Likely future income, in turn, is determined by multiplying the taxpayer's monthly disposable income (gross income minus necessary living expenses) by a certain number of months.  See IRM pt. 5.8.5.22 (Oct. 22, 2010), pt. 5.8.5.25 (Mar. 23, 2018).

[5]The offer specialist's notes reflect that she originally calculated the Abrahams' likely future income over 12 months.  In the AET, however, she used 33 months.

**[*9]** In August 2019 the offer specialist sent a letter preliminarily rejecting the Abrahams' proposed OIC on the ground that the Abrahams "have the ability to pay [their] liability in full within the time provided by law". The COIC unit subsequently transferred the Abrahams' case file back to the Office of Appeals for a final determination.

3. CDP Hearing

The settlement officer concurred in the offer specialist's analysis. She held a CDP hearing with Mr. Abraham on November 20, 2019, at which she explained that the Abrahams did not qualify for an OIC because they had sufficient income and assets to pay their liabilities in full and that there was no indication of any economic hardship. Like the offer specialist, the settlement officer urged an installment agreement, which Mr. Abraham rejected. After stating that he "may file bankruptcy", Mr. Abraham sought (and received) confirmation that he could request Tax Court review of the settlement officer's determination.

On December 12, 2019, the Office of Appeals issued a notice of determination sustaining both the filing of the NFTL for the years at issue and the rejection of the Abrahams' OIC. The notice stated that the OIC was rejected because the Abrahams had "an ability to full[y] pay [their] tax liability". Specifically, the notice explained that the Abrahams had monthly disposable

**[\*10]** income of $14,161 and net equity in assets of $220,758, resulting in an RCP of $688,071 over 33 months.

## Discussion

### I.    Jurisdiction

Before turning to the dispute between the parties over the rejection of the Abrahams' OIC, we pause to address a jurisdictional point.  In their petition the Abrahams purport to challenge a notice of determination with respect to their 2012-17 tax years.  The notice of determination at issue, however, relates solely to 2012-16.  The Abrahams have failed to present any evidence showing that the IRS issued a notice that would provide us with jurisdiction over 2017, as is their burden.  See David Dung Le, M.D., Inc. v. Commissioner, 114 T.C. 268, 270 (2000), aff'd, 22 F. App'x 837 (9th Cir. 2001).  We accordingly dismiss that claim for lack of jurisdiction.  See secs. 6320(c), 6330(d)(1); see also Atl. Pac. Mgmt. Grp., LLC v. Commissioner, 152 T.C. 330, 333 (2019).

### II.   Governing Principles

#### A.    Summary Judgment

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials.  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  Under Rule 121(b) the Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be

**[*11]** rendered as a matter of law. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. Id. The nonmoving party, however, may not rest upon the mere allegations or denials of its pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

B.     Standard of Review

We have jurisdiction to review the Office of Appeals' determination pursuant to sections 6320(c) and 6330(d)(1). Where, as here, the underlying tax liability is not at issue, we review the determination of the Office of Appeals for abuse of discretion. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 182 (2000). In reviewing for abuse of discretion, we must uphold the Office of Appeals' determination unless it is arbitrary, capricious, or without sound basis in fact or law. See, e.g., Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006); Taylor v. Commissioner, T.C. Memo. 2009-27, 2009 WL 275721, at *9.

III.     Abuse of Discretion

The Abrahams contend that the Office of Appeals abused its discretion in rejecting their OIC. We consider whether the settlement officer: (1) properly

[*12] verified that the requirements of any applicable law or administrative procedure have been met; (2) considered any relevant issues the Abrahams raised; and (3) considered whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [the Abrahams] that any collection action be no more intrusive than necessary." Sec. 6330(c)(3). Our review of the administrative record establishes that the settlement officer satisfied all the requirements.

A.     Verification

As an initial matter, this Court has authority to review satisfaction of the verification requirement regardless of whether the taxpayer raised that issue at the CDP hearing. See Hoyle v. Commissioner, 131 T.C. 197, 200-203 (2008), supplemented by 136 T.C. 463 (2011). The Abrahams have not challenged verification, and we conclude, from our review of the record, that the settlement officer conducted a thorough review of the account transcripts and verified that all applicable requirements were met.[6]

---

[6]"Where the supervisory approval requirement of section 6751(b)(1) applies, the Appeals officer should obtain verification that such approval was obtained". ATL & Sons Holdings, Inc. v. Commissioner, 152 T.C. 138, 144 (2019). The approval requirement of sec. 6751(b)(1) does not apply to additions to tax under secs. 6651(a)(2) and 6654. See sec. 6751(b)(2)(A).

**[*13]** B.     Issue Raised

1.     Legal Background

The crux of the controversy here is the settlement officer's decision to sustain the offer specialist's rejection of the Abrahams' OIC of $50,000. Section 7122(a) authorizes the Secretary to compromise an outstanding tax liability on grounds including doubt as to collectibility, the ground that the Abrahams urged.  See sec. 301.7122-1(b)(2), Proced. & Admin. Regs.  The Secretary may compromise a tax liability on this basis where the taxpayer's assets and income render full collection unlikely.  Id.  Conversely, the Secretary may reject an OIC when the taxpayer's RCP exceeds the amount he proposes to pay.  See Johnson v. Commissioner, 136 T.C. 475, 486 (2011), aff'd, 502 F. App'x 1 (D.C. Cir. 2013). Generally, a settlement officer is directed to reject any offer substantially below the taxpayer's RCP unless special circumstances justify acceptance of such an offer. See Mack v. Commissioner, T.C. Memo. 2018-54, at *10; Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517.

In reviewing the settlement officer's determination we do not make an independent evaluation of what would be an acceptable collection alternative.  See Thompson v. Commissioner, 140 T.C. 173, 179 (2013); Murphy v. Commissioner, 125 T.C. at 320; see also Randall v. Commissioner, T.C. Memo. 2018-123, at *9. Rather, our review is limited to determining whether the settlement officer abused

**[*14]** her discretion--that is, whether her decision to reject a taxpayer's offer was arbitrary, capricious, or without sound basis in fact or law. See Thompson v. Commissioner, 140 T.C. at 179; see also Murphy v. Commissioner, 125 T.C. at 320. A settlement officer does not abuse her discretion when she relies on relevant Internal Revenue Manual (IRM) provisions in evaluating collection alternatives. Eichler v. Commissioner, 143 T.C. 30, 39 (2014).

  2. Analysis of the OIC

The settlement officer's decision to reject the Abrahams' $50,000 OIC was not an abuse of discretion in light of the financial analysis of the Abrahams' income, expenses, and assets, which showed monthly disposable income of $14,161 and equity in assets of $220,758. Although the Abrahams raise several objections to the financial analysis, none disturb the bottom-line conclusion that the Abrahams' monthly disposable income and available assets vastly exceeded their OIC and justified the settlement officer's rejection.

  a. RCP

The Abrahams contend that the financial analysis contained three flaws affecting the RCP. They assert that the offer specialist's financial analysis incorrectly disallowed monthly religious education expenses of $2,932 for their dependent daughters in violation of the Religious Freedom Restoration Act of 1993, Pub. L. No. 103-141, 107 Stat. 1488. The Abrahams further argue that the

[*15] financial analysis incorrectly included as assets $61,075 "set aside for taxes and IRA contributions." Finally, they contend that the financial analysis incorrectly computed the RCP by multiplying the monthly disposable income by 33 months rather than 12 months.

Assuming, arguendo, that the Abrahams are correct in each regard, we nonetheless will uphold the settlement officer's decision to reject the Abrahams' OIC. We have previously explained that "even if the settlement officer made errors in calculating * * * [the taxpayer's] RCP, we will uphold his decision when the taxpayer's offer is far less than the correct RCP." Alphson v. Commissioner, T.C. Memo. 2016-84, at *25; see also Gustashaw v. Commissioner, T.C. Memo. 2018-215, at *24. If the Abrahams are correct on each of their arguments, their monthly disposable income would be $11,229 ($14,161 − $2,932), their likely future annual income would be $134,748 ($11,229 × 12), and the net equity in their assets would be $159,683 ($220,758 − $61,075). Even if the financial analysis contained the errors that the Abrahams suggest, the RCP would still be $294,431-- nearly six times their $50,000 OIC. Given that the Abrahams' OIC is far less than the RCP, even if they were to prevail on each argument, we would uphold the settlement officer's decision to reject the OIC.[7]

---

[7]In their response to the motion for summary judgment the Abrahams also contend that the settlement officer abused her discretion by not performing a bankruptcy analysis, as purportedly required by IRM pt. 8.23.3.3.2.3(2) (Aug. 18,

**[\*16]**                    b.        Special Circumstances

The Abrahams assert that the settlement officer failed to properly consider special circumstances when she rejected their OIC.  See IRM pt. 5.8.11.2(2) (Oct. 4, 2019).  In this context special circumstances include:  (1) facts demonstrating that the taxpayer would suffer "economic hardship" if the IRS were to collect from him an amount equal to the RCP and (2) compelling public policy or equity considerations that provide sufficient basis for compromise.  See Murphy v. Commissioner, 125 T.C. at 309; McClanahan v. Commissioner, T.C. Memo. 2008-161, 2008 WL 2550665, at \*3; sec. 301.7122-1(b)(3), Proced. & Admin. Regs.; IRM pt. 5.8.4.2(4) (May 10, 2013).

The Abrahams fail to show any special circumstances that would weigh against rejection of their OIC.  The Abrahams focus on their retirement prospects, asserting that Mr. Abraham's age and his ineligibility for pension and Social Security benefits from his Federal service constitute special circumstances.

---

2017), in response to Mr. Abraham's statement at the CDP hearing that he "may file bankruptcy."  The IRM "does not have the force of law and does not confer rights on taxpayers."  Fargo v. Commissioner, 447 F.3d 706, 713 (9th Cir. 2006), aff'g T.C. Memo. 2004-13.  In any event, IRM pt. 8.23.3.3.2.3(2) states that "[s]hould the taxpayer state an intent to file bankruptcy", the settlement officer should "make a general analysis of collectibility and the liabilities that would be discharged."  As explained at length, such an analysis had been performed by the offer specialist and adopted by the settlement officer, and that analysis demonstrated that the Abrahams could fully pay their outstanding liabilities.

[*17] We disagree. Mr. Abraham's income was "relatively steady" in the years before the CDP hearing, with the 2018 tax return for Mr. Abraham's law firm indicating a distribution to him of $373,300 in that year. The Abrahams fail to explain why, given Mr. Abraham's level of education and the nature of his work, his age (63 years old) would suggest a significant diminution of his income. See Bergevin v. Commissioner, T.C. Memo. 2008-6, 2008 WL 123931, at *11 (finding no abuse of discretion in settlement officer's decision to not treat ages of 70 and 71 as a special circumstance); see also Brombach v. Commissioner, T.C. Memo. 2012-265, at *23-*25 (finding no abuse of discretion in declining to treat prospect of retirement as a special circumstance). And the fact that Mr. Abraham chose to relinquish pension and Social Security benefits from his Federal service in exchange for a lump-sum payment in 1995 is of no moment to the current analysis.

Neither Mr. Abraham's age nor his ineligibility for benefits from his long-ago Federal service suggests that the Abrahams would face looming economic hardship if the IRS were to collect an amount equal to the RCP.[8] And neither supplies compelling public policy or equity considerations that would justify compromising the Abrahams' liabilities.

In summary, we conclude that the settlement officer did not abuse her discretion in rejecting the Abrahams' OIC.

---

[8]Of course, if the Abrahams' financial circumstances change, they are free to submit another OIC to the IRS for consideration. See sec. 6330(d)(3)(B).

[*18] C.     Balancing

The Abrahams do not allege on petition or argue at any later point that the settlement officer failed to consider "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." See sec. 6330(c)(3)(C).  They thus have conceded this issue.  See Rule 331(b)(4); see also Ansley v. Commissioner, T.C. Memo. 2019-46, at *19.  In any event the settlement officer expressly concluded in the notice of determination that the filing of the NFTL balanced the need for efficient tax collection with the Abrahams' legitimate concern about intrusiveness because they provided neither a valid justification to withdraw the lien nor a viable collection alternative.  Again, we see no abuse of discretion.

IV.     Conclusion

Finding no abuse of discretion in any respect, we will grant summary judgment to the Commissioner and affirm the IRS' determination to sustain the collection action for the years at issue.

To reflect the foregoing,

An appropriate order and decision will be entered.